```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

TIMOTHY O'HANLON, et al.,       :
    Plaintiffs,                 :
V.                              :   CASE NO. 3:07-CV-1727 (RNC)
CITY OF DANBURY, et al.,        :
    Defendants.                 :
```

                          RULING AND ORDER

Plaintiffs, three individuals seeking appointment to entry-level positions with the Danbury Fire Department, brought this suit in Connecticut Superior Court claiming that less qualified applicants have been appointed in violation of state and federal law.  The defendants removed the case based on the federal claims and now move to dismiss those claims, as well as a state law claim.  The motion is granted as to the federal claims and the remaining claims are remanded to state court.

I. Background

Under the City of Danbury's Charter and Civil Service Rules and Regulations ("Rules"), employees must be hired based on merit.  The Charter mandates that all "fire officers" be appointed by the Mayor and confirmed by the Common Council in accordance with a process set forth in the Rules.  (City of Danbury Charter, Chapter VI § 6-3.)  The Rules "provide a means for selecting and promoting each public official and employee upon the sole basis of his or her proven ability to perform the

duties of his or her office of employment more efficiently than any other candidate." (Civil Service Rules and Regulations, § 1.)

The Rules require that firefighters be hired pursuant to an open competitive examination process, which works as follows. When a position becomes available, the Mayor submits a "Request for Personnel" form to the Civil Service Commission ("the Commission") describing the position. (Id. §§ IV.A-B.) The Commission publishes an announcement of an examination to evaluate candidates for the position. (Id. § V.A.) Anyone interested in competing for the position must submit an application to take the examination. (Id. § V.B.) The examination is conducted in phases, including a review phase evaluating the candidate's experience, training and education; oral and written phases measuring the candidate's job knowledge, skill, and ability; a performance phase measuring the candidate's skill, strength, and agility; and a medical and psychological evaluation. (Id. § VI.B.) Applicants are ranked according to their composite score, (Id. § VI.H.4), and the results are compiled into an eligibility list. (Id. § VII.A.) The Commission certifies to the Mayor the six highest ranked persons on the list. (Id. § VII.B.) The Mayor interviews these applicants and appoints one of them to fill the position. (Id. § VIII.A.)

In June 2005, the City announced that it was accepting applications for entry-level firefighter positions. Applicants were required to take a written examination worth sixty percent of their composite score, an oral examination worth forty percent, and a physical exam graded on a pass-fail basis. Additional points were awarded to applicants who were veterans, City residents or volunteer firefighters.

Plaintiffs Sussman, O'Hanlon and Ratajack applied for and took the examination. When the results were released,[1] Sussman ranked 8th on the eligibility list, O'Hanlon ranked 18th, and Ratajack ranked 153rd. Plaintiffs allege that persons who ranked below them on this eligibility list have been hired. They allege that many of these persons, including some of the named defendants, were hired because of nepotism, while they were passed over because City officials "black-balled" them based on unofficial investigations.

II. Discussion

Defendants move to dismiss the third, fourth and fifth counts of the amended complaint. In the third count, plaintiffs claim that they were "intentionally treated differently from others similarly situated without rational basis for that

---

[1] Plaintiffs allege that, by the time the eligibility list was published, the City had already hired six candidates, in violation of the rule that the Mayor select candidates certified to him from the eligibility list.

treatment." (Pls.' Am. Compl. ¶ 110.) The fourth count claims that plaintiffs were "deprived of the administration of the hiring process in compliance with the Charter and the Civil Service Rules of the City of Danbury and the Constitution of the United States." (Pls.' Am. Compl. ¶ 119.)[2] Though this count can be construed as a due process claim (and defendants initially treated it as such), plaintiffs have made it clear that both the third and fourth counts are limited to equal protection claims. (See Pls.' Mem. Opp. Mot. Dismiss 11).[3]

As plaintiffs acknowledge, the claims presented in the third and fourth counts are "class of one" equal protection claims. In other words, the claims do not allege unequal treatment of the plaintiffs based on their race, religion, sex or membership in any other identifiable class. Rather, the claims allege unequal treatment of the plaintiffs for reasons that are either arbitrary or malicious. In Engquist v. Oregon Dep't of Agriculture, __ U.S. __, 128 S.Ct. 2146, 2148-49 (2007), the Supreme Court held that the "class-of-one theory of equal protection has no place in the public employment context."

Plaintiffs attempt to distinguish Engquist in two ways.

---

[2] The fifth count alleges common law fraud.

[3] Defendants' motion to dismiss argued that any due process claim should be dismissed. Plaintiffs' memorandum in opposition made no reference to a due process claim. Defendants subsequently withdrew their arguments relating to due process.

First, they argue that their claim does not arise from the employment context, but rather the "pre-employment context." This distinction is relevant, they argue, because the opinion in Engquist notes that "[p]ublic employees typically have a variety of protections" available to them. Id. at 2157. Plaintiffs, on the other hand, enjoy no such protections because they are not public employees. While this is true, it misses the basis of the holding in Engquist. The decision recognizes that

> the class-of-one theory of equal protection-which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review-is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.

Id. at 2155.

The basis for the Court's holding in Enquist applies equally to hiring decisions, "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." Id. at 2144. See Conyers v. Rossides, __ F.3d __, 2009 WL 513734, at * 11 ("Because [plaintiff], like Engquist, does not assert an employment-related equal protection claim arising out of his membership in any particular group, but rather a claim based upon a general allegation that an agency 'treated a prospective employee differently from others for a bad reason, or for no reason at

5

all,' his equal protection claim cannot survive defendant's motion to dismiss.") (internal citation and alterations omitted).

Plaintiffs' second point of distinction is that they are not in fact a class of one, but rather a larger "identifiable class of individuals" who have not been selected for employment with the fire department.  In making this argument, plaintiffs do not point to a characteristic that is both shared by members of this alleged class and resulted in the difference in treatment on which the claim is based.  In view of this, plaintiffs' assertion that they are members of a larger identifiable class adds nothing of substance to their "class of one" claims, each of which is clearly barred by Enqquist.

III. Conclusion

Accordingly, the motion to dismiss is granted as to counts three and four of the amended complaint, which are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining claims, which are remanded to the Connecticut Superior Court.

So ordered this 9th day of March 2009.

                                        /s/ RNC
                                 Robert N. Chatigny
                       United States District Judge